DECISION AND JOURNAL ENTRY
{¶ 1} Appellant Christopher J. Freeman has appealed from a judgment of the Lorain County Court of Common Pleas, Probate Division, that sanctioned him under Civ.R. 11. This Court affirms.
 I {¶ 2} The instant matter arose from the death of Jesse Call ("Call"). Call died on September 1, 2001. Patricia Bulloch ("Bulloch"), one of Call's daughters, was named executrix of his estate. Prior to and after Call's death, his two other daughters, Nancy Mishak ("Mishak") and Susan Smith ("Smith"), were at odds with Bulloch. As a result of various unresolved issues concerning the estate and the events leading up to Call's death, Appellant, on the behalf of Mishak and Smith, filed an objection to the final account of Call's estate on May 1, 2003.
 {¶ 3} The objection claimed that credible evidence existed that significant assets were missing from Call's estate, that Bulloch was in possession of said assets, and that Bulloch had repeatedly refused to cooperate and supply Mishak and Smith with information concerning the estate and Call. In the objection Appellant stated that:
"1. Patricia Bulloch (the Executer of the Estate of Jesse Call and the Power of Attorney Holder for Jesse Call) `purchased' the decedent's residence from him just prior to the time that Call began receiving Medicaid. * * * No witnesses signed the sales contract entered into by the Executor and Call and Call had no representation (legal or otherwise) during the transaction. There were no tests conducted to determine whether Call was competent and, in fact, there is significant evidence that he was incompetent prior to and at the time that Call entered into the sales contract, including the fact that Call had been admitted to a nursing home facility for intentionally starving himself. Mr. Callreceived only 48% of the net proceeds from the sale of his residencewhile Patricia Bulloch received an equal sum, 48% of the sales proceeds($4,585+$1,179+$25,650), all during the time that she was acting in afiduciary capacity for Jesse Call. * * * The above transaction was a transfer for less then adequate consideration, made to and for the benefit of his Fiduciary, resulted in Jesse Call becoming insolvent within 6 months of the sale of the residence and resulted in significant financial gain to Patricia Bulloch. Further, this transaction caused the total loss of any inheritance to Nancy Mishak and Susan Smith. Pursuant to the terms of Jesse Call's Will, his estate was to be split equally between his three daughters, Patricia Bulloch, Nancy Mishak, and Susan Smith. The Executor's action resulted in a transaction that distorted and circumvented Call's stated intentions with regard to his property distribution (as the same was set forth in his Will).
"2. [Between November 2000 and January 21, 2001,] the Executor was making all of Jesse Call's medical and financial decisions for him, purportedly for his benefit. In fact, on February 14, 2001, Smith and Mishak have been informed there was an incident in a doctor's office in which the Executor demanded of the physician's staff that no medical procedures be performed on Jesse Call without her consent. This demand was noted in the medical files. The facts as they exist show that Call wasnot making any of his own medical decisions, he was not making any of hisfinancial decisions and that he was not signing any of his checks.Notwithstanding Call's limited decision making ability with regard to hisfinancial and health decisions, Call was induced into signed (sic) acontract to sell his single biggest asset to his Power of Attorney Holderand received less than half of the sales price.
"* * *
"5. Jesse Call never obtained the cancer treatment that he was supposed to receive while in the nursing home and Call died on September 1, 2001 as a result of (or at least as a contributing factor) from not receiving that treatment.
"6. Attached hereto is a letter dated April 9, 2003 from the Lorain County Human Services Fraud Investigations Division and received by Smith and Mishak. The Division requested Mishak and Smith to supply it with information regarding whether the Executor committed fraud in order to permit Call to qualify for Medicaid payments.
"* * *
"8. Further, additional funds belonging to the Call Estate are unaccounted for and there exist many questionable payments from Call's bank accounts (made by the Executor) for which the Executor has refused to account or provide any details. The Executor admitted to a witness that she transferred $5,000 out of Call's bank account and paid said funds to herself in order to qualify Call for Medicaid. The Executor has also paid out of the Estate of Jesse Call the costs for her son's travel expenses to attend Call's funeral.
"* * *
"10. Smith and Mishak have requested an Accounting from the Executor on four(4) occasions. While the Executor did supply some information approximately one (1) year ago, she refused to supply the missing information that has been requested, even though she had acknowledged that the same would be produced to Smith and Mishak.
"Based on the above information and the fact that Lorain County Human Services is investigating this case, there is considerable evidence that the Estate of Jesse Call should not be finalized and that there exists possible fraudulent transfers for the benefit of the Executor in her capacity as Fiduciary for Jesse Call and Executor of his Estate."
 {¶ 4} On May 19, 2003, counsel for Bulloch filed a motion to strike objection to final account and for Rule 11 sanctions. The motion requested that the trial court strike the objection and issue sanctions because the objection "contain[ed] immaterial, impertinent, or scandalous matter." On May 19, 2003, a hearing was held before a magistrate on Appellant's: 1) objection to final account; 2) motion to remove executrix; and 3) motion for accounting. Prior to any testimony or presentation of evidence, Appellant withdrew his objection to the final account and motion to remove Bulloch as executrix. Appellant withdrew his motion after the magistrate indicated Appellant had not filed the proper motions for his allegations and relief sought. The magistrate declined to proceed on the pending motion for accounting. The magistrate found that "[t]hough objectors withdrew their Objection to Final Account, that withdrawal did not dispose of issues raised in the motion to strike and for sanctions."
 {¶ 5} On July 15, 2003, Appellant replied to Bulloch's motions with a response and opposition to strike objection to final account and for Rule 11 sanctions.[1] Appellant claimed that "[a]ll allegations made in the [objection were] based upon evidence known to [Smith and Mishak] and can and will be proven true. As such, the same cannot be considered as scandalous." Appellant also argued that Bulloch could not "prove any false or patently false statements" were made in the objection. Appellant continued his argument stating that "[t]he Executrix ha[d] misstated the intent of the [objection]." Appellant argued that he "did not seek or attempt to `obtain a determination as to the validity of a transfer of possession of real estate during the lifetime of [Call].'"
 {¶ 6} Appellant stated in his motion in opposition that "the main goal of the Objection was to request that the account not be finalized and closed, pending the determination of the issues raised in the Objection." The objection also sought to obtain "additional time prior to finalizing the Account * * * to permit full and complete discovery and file the proper action that would request either damages or reveal concealed assets." When Appellant learned that all funds held by the estate were paid to Medicaid and that the magistrate would not consider any pre-death transfers of property, he withdrew his objection to the final accounting. Appellant argued that by withdrawing the motion he "avoided the issues upon which the Executrix now seeks sanctions."
 {¶ 7} Appellant argued that he should not be sanctioned under Civ.R. 11 because he did not willfully violate the rule and that he believed the motion was supported by good grounds. Appellant claimed that the motion was based upon facts "ascertained, held or determined by Smith and Mishak and their counsel prior to and at the time the Objection was filed."
 {¶ 8} The following day, July 16, 2003, the magistrate held a hearing on Bulloch's motion to strike and for Civ.R. 11 sanctions. Appellant, along with Cheri L. Ramsburg ("Ramsburg"), former counsel to Smith and Mishak, Bulloch, and John Pincura, a Lorain County attorney, testified at the hearing.
 {¶ 9} Appellant testified to the following. Appellant and Ramsburg drafted the objection to final account and Appellant signed and filed it because he had more litigation experience. Appellant filed the objection because he did not believe the account should be finalized and he wanted the court to know the full circumstances surrounding the case.
 {¶ 10} On cross-examination, Appellant was questioned about the statements in the objection alleging that Call was incompetent. Appellant was told by Smith and Mishak that they believed Call was incompetent and based on their statements he included that information in his objection. When asked about what other information he obtained concerning Call's competency, Appellant explained that he had not received the requested medical information on Call and "all [he] could do was rely upon what [his] clients told [him]." Bulloch's counsel questioned why Appellant did not subpoena the medical records from Call's nursing home and Appellant responded "I can only rely on what my clients tell me in the absence of documentation being provided by [Bulloch's counsel]." Appellant admitted that he had not spoken to anyone about Call and the estate besides Smith, Mishak, and Ramsburg.
 {¶ 11} When questioned about the basis for the allegations in paragraph 5 of the objection, which stated that Call never received the proper cancer treatment and died as a result of the lack of treatment, Appellant stated that Smith and Mishak provided him with that information and based on their statements he included that allegation in the pleading. Appellant admitted that he had no other basis for the allegation in paragraph 5 besides the statements of Smith and Mishak.
 {¶ 12} Appellant testified that the objection was based on facts as provided by Smith and Mishak and his own investigation into Call's bank records. Appellant admitted that he reviewed the real estate records after he filed the objection. Appellant believed that all the statements in the objection were relevant to the final accounting. When pressed about the exact basis for his allegations, Appellant responded:
"These are allegations based on what my clients informed me. I did in good faith conversations with my clients, some independent representation, conferences with [Ramsburg] who has been doing probate and estate issues for many years, and based upon that information I put my signature to this. I believe when I signed this that it was accurate, reasonable, closely stated as facts and nonscandalous."
 {¶ 13} Appellant believed he had good grounds to file the objection and he filed it because he and Ramsburg "wanted to bring to the attention of the Court that there were outstanding issues with regard to [Call's] estate." Appellant and Ramsburg wanted to conduct a more thorough investigation through the accounting before it was finalized. They "wanted to let the Court know that some of the transactions [in the estate] based upon [their] conversations with [Smith and Mishak] and [their] own research didn't smell right and, therefore, [they] filed the objection."
 {¶ 14} The magistrate issued his decision on August 22, 2003. The magistrate found that:
"Mishak and Smith raise serious allegations against Bulloch and there are forums and proceedings in which theses allegations can be heard. However, because inter vivos transactions and the other issues raised by [Appellant] are beyond the scope of a hearing or an account, I recommend that the Objection to Final Account be stricken as being immaterial. I further recommend that the Objection to Final Account be stricken because it contains scandalous matter in referring to Bulloch's purported fraud and purported failure to provide her father with cancer treatments." {¶15} After deciding to strike the objection the magistrate turned to the Civ.R. 11 issue. The magistrate framed the issue as "whether an attorney, who reasonably relies upon the representations of others, can be sanctioned under Rule 11 for alleging matters that are immaterial or scandalous?" The magistrate determined that:
"According to Civil Rule 11, the signer of a pleading can be sanctioned for alleging immaterial and scandalous matters because such matters, obviously, do not constitute `good ground to support' a pleading. Whether or not an attorney reasonably relies upon information provided by clients is only part of the analysis. The other Rule 11 condition which must be satisfied is that there must be `good ground to support' the particular pleading." {¶ 16} The magistrate concluded that Appellant "had an obligation to use information that constitutes `good grounds to support' objections to a final account and not to set forth information that is irrelevant to objections to a final account." The magistrate found that "the caption of the pleading, `Objection to Final Account,' is a misnomer in that it refers to matters that are beyond the scope of a hearing on an account." In finding that Appellant violated Civ.R. 11, the magistrate stated that "[t]he Objection to Final Account contains matters that can be characterized as gratuitous, offensive, vexatious, and scandalous and for which there was no opportunity for Bulloch to rebut in a hearing on the account." The magistrate recommended that Appellant "be required to pay Bulloch $22,847.00 in expenses and attorney fees that she incurred in opposing the Objection to Final Account and in having it stricken."
 {¶ 17} On September 5, 2003, Appellant filed objections to the magistrate's decision. Appellant's objections were "limited to the decision of the Magistrate to issue sanctions under Ohio Civil Rule 11 for the filing of the Objection to Final Accounting." Appellant argued that the motion for sanctions should have been denied because there was no evidence that he: "1) did not read the Objection to Final Accounting that he filed * * * [;] 2) did not harbor good grounds to support it to the best of his * * * knowledge, information, and belief * * * [;] and 3) filed the Objection for purposes of delay." Appellant claimed that there was no willful violation of Civ.R. 11 and that the magistrate's decision was erroneous. He alleged that the objection did not seek to reverse pre-death transfers, rather it was filed to stop the finalizing of the account. Appellant also argued that the magistrate's decision failed to find the necessary element of bad faith required to impose attorney's fees as sanctions and the award of attorney's fees were excessive.
 {¶ 18} On September 15, 2003, Bulloch filed a response to Appellant's objections. Bulloch argued that: 1) Appellant willfully violated Civ.R. 11; 2) Appellant's objection to final accounting was irrelevant to the issues involved in the accounting; and 3) the attorney fees were an appropriate award to compensate Bulloch for Appellant's wrongful acts.
 {¶ 19} On October 6, 2003, the trial court adopted the magistrate's findings on striking the objection to the final account and on sanctioning Appellant under Civ.R. 11. The trial court found that "[a] determination that allegations are immaterial and scandalous is equivalent to a determination that the allegations do not constitute good ground in support of the filing Objection to Final Account." The trial court found that Appellant's allegations were not made negligently because he "intended those allegations to be [the] basis for the Objection to Final Account and not some other pleading." Thus, the trial court implied that Appellant's actions were willful. The trial court concluded that "[t]he Objection to Final Account lack[ed] good grounds and cast[ed] ad hominem aspersions that cannot be litigated in a hearing on a final account." The trial court adopted:
"[T]he magistrate's findings and conclusions of law with respect to Civil Rule 11 that [Appellant] signed the Objection to Final Account without stating good grounds in support of objections to a final account. The court further finds that filing a pleading replete with immaterial allegations exhibits a willfulness to act vexatiously or for oppressive reasons." {¶ 20} While the trial court adopted the magistrate's decision striking the objection to final account and finding that Appellant violated Civ.R. 11, it ordered "further hearing on the reasonableness of expenses and attorney fees to be paid under Civil Rule 11 proceedings."
 {¶ 21} Appellant has timely appealed the trial court's decision, asserting one assignment of error.[2]
 II Assignment of Error Number One
"The court below abused its discretion in assessing [Civ.R. 11] sanctions against [appellant.]"
 {¶ 22} Appellant has argued that the trial court abused its discretion when it found that he violated Civ.R. 11 and sanctioned him as a result of that violation. Specifically, Appellant has presented three arguments to show that the trial court abused its discretion: 1) Appellant has argued that he satisfied the test announced in Ceol v. Zion Industries
(1992), 81 Ohio App.3d 286; 2) Appellant has argued that negligence in the use of the wrong procedure is not sanctionable especially where the claims brought were otherwise facially meritorious, there was no discovery, the merits of the claims were never determined by the court and the attorney immediately withdrew the action when the court opined that the allegations made were immaterial to the proceeding initiated by counsel; and 3) Appellant has argued that the trial erred as a matter of law in determining that the allegations in the objection to final account were immaterial to such an objection.
 {¶ 23} Pursuant to Civ.R. 11:
"The signature of an attorney or pro se party constitutes a certificate by the attorney or party that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. * * * * For a willful violation of this rule, an attorney or pro se party, upon motion of a party or upon the court's own motion, may be subjected to appropriate action, including an award to the opposing party of expenses and reasonable attorney fees incurred in bringing any motion under this rule. Similar action may be taken if scandalous or indecent matter is inserted."
 {¶ 24} "An appellate court reviews a trial court's award of sanctions under Civ.R. 11 for abuse of discretion." Nationsrent dba CentralRent-All v. Michael Constr. Co. (Mar. 27, 2002), 9th Dist. No. 20755, at 5, citing State ex rel. Fant v. Sykes (1987), 29 Ohio St.3d 65. A finding of abuse of discretion requires more than simply an error in judgment; it implies unreasonable, arbitrary, or unconscionable conduct by the court.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd.
(1993), 66 Ohio St.3d 619, 621.
 {¶ 25} When presented with a motion for sanctions pursuant to Civ.R. 11, a trial court "must consider whether the attorney signing the document (1) has read the pleading, (2) harbors good grounds to support it to the best of his or her knowledge, information, and belief, and (3) did not file it for purposes of delay." Ceol v. Zion Indust., Inc.
(1992), 81 Ohio App.3d 286, 290. If any one of these requirements is not satisfied, the trial court must then determine whether "the violation was `willful' as opposed to merely negligent." Id. (Citations omitted.) "A willful violation involves a party who has willfully signed a pleading which, to the best of his knowledge, information and belief, was not supported by good ground." Nationsrent, at 5, citing Haubeil SonsAsphalt Materials, Inc. v. Brewer Brewer Sons, Inc. (1989),57 Ohio App.3d 22, 23. If the trial court finds that the violation was willful, it may impose an appropriate sanction. Ceol,81 Ohio App.3d at 290.
 {¶ 26} Appellant has argued that the trial court abused its discretion because it failed to follow the three part test established in Ceol.Ceol, supra. Specifically, Appellant has argued that 1) he read the objection; 2) to the best of his knowledge, information, and belief he harbored good grounds to support the objection; and 3) the objection was not filed for purposes of delay. Appellant has also argued that even if the trial court correctly found that he did not have good grounds for the objection, the deficiency was not willful. Bulloch has countered that the trial court complied with the test in Ceol and properly determined that Appellant violated Civ.R. 11. We agree with Bulloch.
 {¶ 27} We find that the trial court did comply with the Ceol test. The trial court determined that Appellant had not satisfied the second prong of the test, that is, he did not have good grounds to support the objection. After finding that Appellant failed one prong of the test, the trial court properly considered whether Appellant's violation was willful. The trial court was not required to find that Appellant failed to satisfy all three prongs of the test or to discuss its findings on the other two prongs. Civ.R. 11 only requires that the trial court consider all three prongs and determine if any of the three are not satisfied. Accordingly, the trial court did not abuse its discretion in its application of the Ceol test.
 {¶ 28} Appellant has argued that the trial court abused its discretion because even if he did not file his allegations under the proper motion, he could have brought them in another motion and therefore they are not sanctionable. Bulloch has argued that Appellant's allegations were scandalous and therefore sanctionable. We agree with Bulloch.
 {¶ 29} We find that Appellant's allegations, specifically the allegations in paragraphs 2 and 5, which imply that Bulloch did not allow Call to receive necessary cancer treatments, have no place in any probate proceeding. Further Civ.R. 11 allows for a finding of a violation if the matters alleged are scandalous. The trial court found the allegations scandalous and we find that such a determination was not an abuse of discretion.
 {¶ 30} Appellant has argued that the trial court abused its discretion because the allegations in the objection were not immaterial. Specifically, Appellant has argued that
"[t]he Objection laid out Appellant's case in detail. That is, the Executrix engaged in transactions, the effect of which was to remove assets from the Decedent's estate to her benefit and qualify him for Medicaid. Then, the Executrix paid out of the estate the Medicaid claim that resulted from her actions. Objections to that disbursement, and the totality of the surrounding circumstances, are appropriate subjects for exceptions (objections) to an account."
 {¶ 31} In response to Appellant's argument that the objection did not contain immaterial allegations, Bulloch has argued that the allegations were immaterial because Appellant had no good grounds to support them. Bulloch has also asserted that Appellant has waived the right to object to materiality because the magistrate struck the objection based on immateriality and Appellant did not object to the objection being stricken.
 {¶ 32} We must note that while immateriality was cited as a reason to strike the objection to the final account, it was also discussed in the Civ.R. 11 portion of the magistrate's decision. Specifically, the magistrate used the term when he laid out the issue before the trial court. We find that immateriality was a reason for the magistrate's Civ.R. 11 sanctions to which Appellant properly objected and is a basis for the instant appeal. While, Appellant did not waive the right to appeal immateriality as it relates to Civ.R. 11, we decline to accept Appellant's argument that the trial court abused its discretion when it found the allegations immaterial.
 {¶ 33} We find that the record before this Court supports the trial court's determination that Appellant lacked good grounds to file the allegations in his objection and that he acted willfully. The trial court did not abuse its discretion when it found immaterial and scandalous matters did not constitute good grounds to support Appellant's objection. Further, the trial court did not abuse its discretion in finding the allegations irrelevant. The trial court acted within the bounds of Civ.R. 11 and we cannot find that it acted in an unreasonable, arbitrary, or unconscionable manner. Appellant's sole assignment of error is not well taken.
 III {¶ 34} Appellant's sole assignment of error is overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Batchelder, J. concurs.
[1] The record indicates Appellant's motion was time-stamped on July 16, 2003, but all parties and the trial court recognized that they received it on July 15, 2003.
[2] On July 2, 2004, the magistrate issued a decision reducing the amount of attorney's fees to $21,681 and the trial court adopted the decision on August 2, 2004. Appellant did not appeal the July 2, 2004 magistrate's decision. Thus, the instant appeal is limited to the October 6, 2003 finding that Appellant violated Civ.R. 11 and not the August 2, 2004 determination of the amount of attorney's fees awarded to Bulloch. See Civ.R. 53(E)(3)(b).